IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CT-3021-FL

| | |
|---|---|
| MARCUS ALSTON, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| THOMAS ELDRIDGE, Clinical Chaplain; BETTY BROWN, Director of Chaplain Services; SUSAN ADDAMS, Regional Chaplain; and CHARLES T. JOHNSON, Assistant Superintendent, | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion for summary judgment (DE 36) pursuant to Federal Rule of Civil Procedure 56. The motion was fully briefed and the issues raised are ripe for decision. For the reasons that follow, the court grants the motion.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint and motion to appoint counsel on January 26, 2017, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. Plaintiff alleges defendants Thomas Eldridge ("Eldridge"), Betty Brown ("Brown"), Susan Addams ("Addams") and Charles Johnson ("Johnson") violated his rights to freely practice his religion and discriminated against him by rejecting a Rastafarian medallion he received in the mail. As relief, plaintiff seeks compensatory and punitive damages, declaratory relief, and a permanent

injunction prohibiting prison officials from discriminating against Rastafarians.

On June 20, 2017, the court denied plaintiff's motion to appoint counsel, conducted its initial frivolity review of the complaint, and allowed the action to proceed. On January 3, 2018, the court entered case management order governing discovery and pretrial motions practice.

Plaintiff filed second motion to appoint counsel on March 15, 2018. The court denied the motion on April 6, 2018, to the extent plaintiff requested general appointment of counsel, but informed plaintiff that North Carolina Prisoner Legal Services, Inc. ("NCPLS") is available to assist plaintiff with discovery pursuant to Standing Order 17-SO-03. Plaintiff accepted assistance from NCPLS. The parties completed discovery on or about July 20, 2018, and NCPLS moved to withdraw from representing plaintiff that same day. The court granted NCPLS's motion to withdraw.

On October 26, 2018, defendants filed the instant motion for summary judgment. In support, defendants rely upon a memorandum of law, statement of material facts, and the following: 1) affidavit of defendant Eldridge and accompanying exhibits; 2) affidavit of defendant Addams and accompanying exhibits; and 3) defendants' responses to plaintiff's discovery requests.

On November 5, 2018, plaintiff filed motion to compel discovery responses, which was fully briefed. Also on November 5, 2018, plaintiff responded in opposition to the instant motion for summary judgment, relying upon a memorandum of law, opposing statement of material facts, and the following: 1) plaintiff's declaration; 2) North Carolina Department of Public Safety ("DPS") policies concerning inmate religious practices; 3) plaintiff's administrative grievances concerning the Rastafarian medallion; 4) correspondence between plaintiff and DPS staff concerning the medallion; 5) DPS memorandum concerning the medallion; and 6) defendants' responses to

plaintiff's discovery requests. On November 8, 2018, plaintiff filed supplemental response in opposition, relying upon a second opposition statement of material facts, and additional discovery responses produced by defendants.

On December 10, 2018, the court entered order finding plaintiff's motion to compel moot because defendants' made supplemental production of documents to plaintiff. The court, however, permitted plaintiff to file second supplemental response to the instant motion for summary judgment to account for the newly-produced discovery responses. Plaintiff filed supplemental response on December 28, 2018, relying upon the additional discovery responses.

## STATEMENT OF THE FACTS

As defendants move for summary judgment, the court recounts the facts in the light most favorable to plaintiff.

Plaintiff is a state inmate in DPS custody at the Polk Correctional Institution ("Polk C.I."), and he practices the Rastafarian religion. (Pl.'s Decl. (DE 48) ¶ 4; Eldridge Aff. (DE 39-1) ¶ 3). Plaintiff is assigned to the high control/restrictive housing unit at the Polk C.I. due to disciplinary issues. (Eldridge Aff. (DE 38) ¶ 10). Defendant Eldridge is the senior chaplain at the Polk C.I.; defendant Addams is a DPS regional chaplain; defendant Brown was the DPS director of chaplaincy services during the relevant time frame; and defendant Johnson was the assistant superintendent at the Polk C.I. (Eldridge Aff. (DE 39-1) ¶ 2; Addams Aff. (DE 39-2) ¶ 2; Pl.'s Decl. (DE 43) ¶¶ 6-8).

On September 9, 2016, plaintiff received a Rastafarian medallion in the mail from his grandmother. (Pl.'s Decl. (DE 48) ¶ 4). Prison staff forwarded the item to defendant Eldridge, who determined the item did not comply with DPS policy and thus rejected plaintiff's request to retain the item for religious purposes. (Id. ¶ 5). Plaintiff filed a grievance concerning the rejection. (Id.

3

¶¶ 7-8). In response, defendant Eldridge explained that Rastafarians may retain a religious medallion, but only if it does not come with a necklace or lanyard. (Pl.'s Resp. Ex. E (DE 42-5) at 1).[1] After further discussion between defendant Eldridge and defendant Johnson (the Polk C.I. assistant superintendent), defendants determined plaintiff may order a new medallion if he agreed to allow prison staff to remove the necklace or lanyard before issuing it to plaintiff. (Id. at 2). Plaintiff refused to order a new medallion. (See Pl.'s Decl. (DE 48)).

For Rastafarian inmates on high control status (like plaintiff), DPS policy provides that they may possess a religious medallion, but it cannot be worn around the neck. (Eldridge Aff. (DE 39-1) ¶ 10; Eldridge Aff. Ex. E (DE 39-1) at 46). This is the primary reason defendant Eldridge rejected plaintiff's medallion. (Eldridge Aff. (DE 39-1) ¶ 10). As noted, defendants attempted to accommodate plaintiff's request for the medallion by allowing him to order another one through an approved vendor with the condition that the accompanying necklace or string would be removed, but plaintiff refused. (Id. ¶ 12).

As a general matter, DPS inmates may possess religious items that include attached strings. (Pl.'s Decl. (DE 43) ¶ 9; Pl.'s Resp. Ex. F (DE 42-6) ¶ 2). For example, DPS policy permits American Indians to possess a medicine bag, Buddhists to possess prayer beads, and Catholics to possess rosaries and scapulars. (Pl's Resp. Ex. F. (DE 42-6) ¶ 2). Before DPS will approve the items, however, the strings must satisfy length restrictions and inmates may not wear these items around their necks. (See, e.g., id.; Eldridge Aff. (DE 39-1) ¶ 14; Defs' App. Ex. 1 (DE 39-3) at 32, 34, 36-37, 39). The policy for high security inmates is more restrictive. For example, Catholics may

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

use a scapular that contains a string but only if the string does not cause a security risk. (Eldridge Aff. Ex. E (DE 39-1) at 45). Rastafarians on high control status may not have a string on their medallions if it can be used as a necklace. (Eldridge Aff. Ex. E (DE 39-1) at 46).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the

5

inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.   Analysis

  1.   RLUIPA and First Amendment Claims

RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy

substantially burdens his exercise of religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, . . . or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); Ozmint, 578 F.3d at 252 (quotations omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190); see Holt v. Hobbs, 135 S. Ct. 853, 866 (2015).

As for the First Amendment, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The

7

United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To establish a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89–91 (1987). If the defendant satisfies the strict scrutiny test under RLUIPA, he also satisfies the reasonableness test set forth in O'Lone and Turner. See Lovelace, 472 F.3d at 186, 199-200.

Defendants argue plaintiff has failed to establish a substantial burden on his religious exercise, and the court agrees. Plaintiff has presented no evidence that defendants' refusal to provide a medallion with a necklace – as opposed to the medallion standing alone, which they agreed to provide but plaintiff refused – substantially pressured him to violate his religious beliefs. For example, the record is devoid of evidence explaining the significance of the necklace portion of the medallion to plaintiff's religion, or why possession of the medallion without the necklace would violate plaintiff's religious beliefs. See 42 U.S.C. § 2000cc-2(b) (plaintiff bears the burden of showing substantial burden element of his RLUIPA claim); Lovelace, 472 F.3d at 198-99 & n.8 (same for First Amendment claims).

Assuming plaintiff had established a genuine issue of material fact with respect to the substantial burden element, defendants have satisfied the RLUIPA strict scrutiny test. Promoting institutional security is a compelling governmental interest. See, e.g., Cutter, 544 U.S. at 722, 725

n.13; Lovelace, 427 F.3d at 190. Indeed, a prison is free to deny inmate religious requests predicated on RLUIPA if they "jeopardize the effective functioning of an institution." Cutter, 544 U.S. at 726.

As set forth above, plaintiff has been placed on high control status due to disciplinary issues. (Eldridge Aff. (DE 38) ¶ 10). In fact, while on high control status, plaintiff previously escaped his individual cell and attacked another inmate. (Eldridge Disc. Resps. (DE 50-1) ¶ 3). If defendants granted plaintiff's request for a string that fits around his (and other inmates') necks, plaintiff would have access to a dangerous weapon he could use to attack other inmates or harm himself. (See Defs' App. Ex. 1 (DE 39-3) at 4). Plaintiff also could use the necklace or string in the construction of additional weapons. (See id.). Particularly in light of plaintiff's documented history of attacking other inmates, defendants' decision to deny plaintiff access to the necklace is in furtherance of a compelling governmental interest in promoting institutional security. See Couch, 679 F.3d at 202 (noting defendants established compelling governmental interest by showing how specific security concerns were furthered by the policy).

Defendants also must establish that prohibiting plaintiff from possessing the necklace is the least restrictive means of furthering their compelling governmental interest. Id.; Ozmint, 578 F.3d at 250. To satisfy this burden, defendants must "acknowledge and give some consideration" to less restrictive alternatives. Couch, 679 F.3d at 203. Plaintiff has not offered an alternative to the policy banning the necklace or string that would address the institutional security issues raised by defendants. See id. (noting defendants must consider alternatives proposed by the plaintiff). Plaintiff does not suggest that he can order a medallion with a shorter string that does not fit around his neck, and he rejected defendants' attempt to accommodate his request by removing the necklace

9

from the medallion. Plaintiff emphasizes that Catholics on high control status may possess a scapular that contains a string. However, the policy provides the chaplain may disallow the string if it presents a security risk, which is precisely what occurred here. (Eldridge Aff. Ex. E (DE 39-1) at 45). Accordingly, defendants have satisfied the least restrictive means test in this instance.

As noted, where defendants have satisfied RLUIPA's strict scrutiny test, they necessarily have satisfied the reasonableness test applicable to plaintiff's First Amendment claim. See Lovelace, 472 F.3d at 186, 199-200. Based on the foregoing, the court grants defendants' motion for summary judgment as to plaintiff's RLUIPA and First Amendment claims.

2. Equal Protection

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff has not established a genuine issue of material fact with respect to the similarly situated element of his equal protection claim. As set forth above, DPS policy prohibits all inmates from wearing religious items around their necks. And the particular security issues presented by

plaintiff's past behavior and high control status means he is not similarly situated to inmates in the general population that can possess religious items containing strings. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) (rejecting equal protection claim because "[t]here is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." (quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977)). Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's equal protection claim.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 36). The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of September, 2019.

LOUISE W. FLANAGAN
United States District Judge